# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| KRISTOFER J. KLITZKE, Individually and on Behalf of Others Similarly Situated,<br><br>v.<br><br>DCP MIDSTREAM, LLC and BALANCE ENVIRONMENTAL & SAFETY SOLUTIONS, INC. | Case No.: _____<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT

### SUMMARY

1.　DCP Midstream, LLC (DCP) and Balance Environmental & Safety Solutions, Inc. (Balance Environmental)(collectively Defendants) did not pay their hourly workers overtime as required by the Fair Labor Standards Act (the FLSA).

2.　Instead, Defendants paid their hourly workers the same hourly rate for all hours worked in a workweek including those in excess of 40 (straight-time-for-overtime).

3.　Defendants' straight-time-for-overtime plan violates the FLSA because all employees paid on an hourly basis are owed overtime pay for hours worked in excess of 40 in a week at the rate of one-and-one-half times their regular hourly rates.

4.　Kristofer J. Klitzke (Klitzke) brings this action to recover the unpaid overtime and other damages owed to the other workers to whom Defendants have paid straight-time-for-overtime.

### JURISDICTION AND VENUE

5.　This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Klitzke's claims occurred in this district and division.

**PARTIES**

7. Klitzke worked for Defendants as a Safety Inspector from approximately October 2017 to June 2019 in and around the Plattville, Kersey, LaSalle, and Greeley, Colorado areas.

8. Throughout his employment, Defendants paid Klitzke by the hour and also paid him straight-time-for-overtime.

9. Klitzke's consent to be a party plaintiff is attached.

10. Klitzke brings a FLSA collective action on behalf of himself and all of Defendants' other workers who were paid according to Defendants' straight-time-for-overtime pay plan.

11. The group of workers Klitzke seeks to represent consists of:

**All workers employed by Defendants in the U.S. and paid according to Defendants' straight-time-for-overtime pay plan at any time during the last 3 years** (the Straight Time Workers).

12. DCP is a Delaware limited liability with its headquarters in Denver, Colorado.

13. DCP is registered and authorized to do business in Colorado.

14. DCP "gathers, compresses, treats, processes, transports, stores, and sells natural gas, as well as produces, fractionates, transports, stores and sells natural gas liquids and recovers and sells condensate, and transports, stores and sells propane in wholesale markets."[1]

15. DCP may be served by serving its registered agent for service of process: The Corporation Company, 7700 E. Arapahoe Rd., Suite 220, Centennial, Colorado 80112-1268.

16. Balance Environmental is a corporation with its principal offices in North Carolina.

---

[1] https://www.dcpmidstream.com/company/business-segments

17. Balance Environmental is registered and authorized to do business in Colorado and maintains a corporate office in Denver, Colorado.[2]

18. Balance Environmental provides inspection, environmental, health, and safety services to the energy, construction and manufacturing industries.[3]

19. Balance may be served by serving its registered agent for service of process: Gene Harris, 910 16th St., Suite 1125, Denver, Colorado 80202, or at any other place where Gene Harris may be found.

### FLSA Coverage

20. For at least the past 3 years Defendants have been employers and/or joint employers within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. For at least the past 3 years Defendants have been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22. For at least the past 3 years Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23. At all relevant times Defendants employed Klitzke and the Straight Time Workers within the meaning of the FLSA, 29 U.S.C. § 203(g).

24. For at least the past 3 years Defendant have had 2 or more employees, including Klitzke and the Straight Time Workers, who were engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including

---

[2] https://balanceusa.org/environmental-health-safety/
[3] https://balanceusa.org/environmental-health-safety/

tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

25. Further, Defendants' annual gross volume of sales have well exceeded $500,000 for at least the past 3 years.

## FACTS

26. DCP is "one of the largest producers of NGLs and one of the largest natural gas processing companies in the U.S."[4]

27. Balance Environmental performs "a wide range of inspection services in addition to project management, engineering and construction support."[5]

28. Klitzke and the Straight Time Workers are among the employees who performed the various inspection, environmental, health, and safety services for Defendants.

29. Defendants' Straight Time Workers, including Klitzke, typically worked more than 40 hours in a workweek and, in fact, they often worked 60 or more hours per workweek.

30. Defendants paid all their Straight Time Workers pursuant to their straight-time-for-overtime pay plan.

31. In October 2017 Klitzke began working for Defendants as a Safety Inspector in Colorado at various facility sites owned and/or operated by DCP.

32. As a Safety Inspector Klitzke was responsible for: enforcing safety policies, plans, and specifications based on DCP's and state and federal standards as well as common best practices for the industry; communicating with DCP and Balance Environmental personnel to ensure compliance

---

[4] https://www.dcpmidstream.com/company
[5] https://balanceusa.org/environmental-health-safety/

with safety requirements; generating incident reports to DCP; and holding safety meetings for DCP field personnel.

33. Defendants' records reflect the hours Klitzke worked each workweek and pay period.

34. Although Defendants ostensibly employed Klitzke on a day rate, Defendants actually paid Klitzke an hourly rate for each hour he worked.

35. Defendants required Klitzke to track his working days and mileage on a "Daily Time Card."

36. For example, for the 2 week pay period ending June 3, 2018 Klitzke recorded a total of 13.2 workdays on his Daily Time Card:

| BALANCE Environmental & Safety | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Daily Time Card | | | | | | | | | |
| Name: | Kris Klitzke | | | | | | | | |
| Job: | Mewbourn III | | | | | | AFE# | 500215904 | |
| Location: | Plattville, Co | | | | | | RC Code | GD31 | |
| Classification: | Safety Inspector | | | | | | Payroll Ending: | 6/3/2018 | |
| | | | | | | | | | |
| Week 1 | | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday | |
| | | 5/21/2018 | 5/22/2018 | 5/23/2018 | 5/24/2018 | 5/25/2018 | 5/26/2018 | 5/27/2018 | Actual Days / Total Mileage |
| | Mewbourn 3 Days Worked | 1.10 | 1.20 | 1.10 | 1.10 | 1.20 | | | 5.70 |
| | Mewbourn 3 Miles Driven | 96 | 104 | 99 | 101 | 100 | | | 500 |
| | | | | | | | | | |
| Week 2 | | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday | |
| | | 5/28/2018 | 5/29/2018 | 5/30/2018 | 5/31/2018 | 6/1/2018 | 6/2/2018 | 6/3/2018 | Total Mileage |
| | Mewbourn 3 Days Worked | 1.00 | 1.10 | 1.20 | 1.10 | 1.10 | 1.00 | 1.00 | 7.50 |
| | Mewbourn Miles Driven | | 99 | 104 | 96 | 99 | 102 | 100 | 600 |
| | | | | | | | | | |
| | Expense Total: | | $0.00 | | Total Miles | | 1100 | Total Days: | 13.20 |
| | | | | | | | | | |
| Balance Rep: | Chris Lammatina | | | | | Date Submitted | | | |
| Project Manager | Ed Sheehan | | | | | | | | |
| Customer Name | DCP Midstream | | | | | | | | |
| | | | | | | | | | |
| | BALANCE Rep Signature_____ | | | Approver Name_____ | | | | | |
| | | | | Approver Signature_____ | | | | | |

37. In actuality, Klitzke only worked on 12 of the 14 days during that pay period (see above).

38. Defendants then required Klitzke to submit an "invoice" in order to be paid.

- 5 -

39. Klitzke's "invoice" for the 2 week pay period ending June 3, 2018 reflected 132 hours of work for which he was paid at $39.00 per hour for each and every hour worked including those in excess of 40 in a workweek:



40. In addition, before Klitzke could be paid, DCP had to review and approve his timesheets and "invoices."

- 6 -

41. DCP directly or indirectly controlled other aspects of Klitzke's employment as well.

42. For example, DCP required Klitzke to submit his résumé to DCP for review and approval before Klitzke could be hired to work at DCP's facility sites.

43. DCP controlled the amount of Klitzke's wages by enforcing a limit on what DCP would pay Balance Environmental for Klitzke's time.

44. Finally, it was DCP who terminated Klitzke's employment when it objected to the contents of an incident report Klitzke submitted to DCP.

45. Together Defendants employed Klitzke within the meaning of the FLSA.

46. Klitzke did not possess or utilize any unique or specialized skillset in performing his job duties.

47. Defendants required Klitzke to adhere to their practices, policies, and procedures.

48. Defendants did not require any substantial investment by Klitzke in order to perform his work.

49. Defendants controlled Klitzke's opportunities for profit and loss by dictating the days and hours he worked and his pay rates.

50. Defendants controlled all the significant and meaningful aspects of the job duties Klitzke performed.

51. Defendants exercised control over the hours and locations Klitzke worked and the tools and equipment he used.

52. Defendants made large capital investments in buildings, machines, equipment, tools, and supplied the business enterprise in which Klitzke worked.

53. Klitzke did not incur operating expenses like rent, payroll, and marketing.

54. Klitzke was economically dependent on Defendants.

55. Although he often worked more 60 or more hours per workweek, Defendants never paid Klitzke any overtime but, rather, paid him straight-time-for-overtime.

56. All Defendants' Straight Time Workers performed duties like those Klitzke performed including: enforcing safety policies, plans, and specifications based on DCP's and state and federal standards as well as common best practices for the industry; communicating with DCP and Balance Environmental personnel to ensure compliance with safety requirements; generating incident reports to DCP; and holding safety meetings for DCP field personnel.

57. The Straight Time Workers worked similar hours and were denied overtime as a result of the same illegal straight-time-for-overtime pay practice.

58. Together Defendants employed the Straight Time Workers within the meaning of the FLSA.

59. The Straight Time Workers did not possess or utilize any unique or specialized skillset in performing his job duties.

60. Defendants required the Straight Time Workers to adhere to their practices, policies, and procedures.

61. Defendants did not require any substantial investment by the Straight Time Workers in order to perform their work.

62. Defendants controlled the Straight Time Workers' opportunities for profit and loss by dictating the days and hours they worked and their pay rates.

63. Defendants controlled all the significant and meaningful aspects of the Straight Time Workers' job duties.

64. Defendants exercised control over the hours and locations the Straight Time Workers worked and the tools and equipment they used.

65. Defendants made large capital investments in buildings, machines, equipment, tools, and supplied the business enterprise in which they Straight Time Workers worked.

66. The Straight Time Workers did not incur operating expenses like rent, payroll, and marketing.

67. The Straight Time Workers were economically dependent on Defendants.

68. Although they often worked more 60 or more hours per workweek, Defendants never paid the Straight Time Workers any overtime but, rather, paid them straight-time-for-overtime.

69. As a result, Defendants failed to pay the Straight Time Workers proper overtime compensation for hours worked in excess of 40 in a workweek.

### FLSA VIOLATIONS

70. Klitzke incorporates all preceding paragraphs.

71. Defendants' straight-time-for-overtime pay plan violates the FLSA because Klitzke and the Straight Time Workers did not receive overtime pay for working more than 40 hours in a workweek.

72. Defendants knew, or showed reckless disregard for whether, their straight-time-for-overtime pay plan violated the FLSA.

73. Defendants' failure to pay overtime compensation to Klitzke and the Straight Time Workers was not based on any reasonable interpretation of the law.

74. Nor was Defendants' decision not to pay overtime made in good faith.

75. Accordingly, Klitzke and the Straight Time Workers are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

76. Klitzke incorporates all preceding paragraphs.

77. Numerous Straight Time Workers have been denied overtime by Defendants' straight-time-for-overtime pay plan which is in willful violation of the FLSA.

78. Several other Straight Time Workers who worked for Defendants have described to Klitzke that they were paid in the same manner, performed similar work, and were not paid overtime as required by federal law.

79. From his observations and experience working for Defendants, Klitzke is aware that Defendants' illegal practices or policies have been imposed on the Straight Time Workers.

80. The Straight Time Workers all regularly worked in excess of 40 hours per week and were paid straight-time-for-overtime.

81. These employees are similarly situated to Klitzke in terms of *relevant* job duties, pay provisions, and employment practices.

82. Defendants' failure to pay overtime as required by the FLSA results from a generally applicable, systematic pay plan that is not dependent on the personal circumstances of the Straight Time Workers.

83. Thus, Klitzke's experiences are typical of the experiences of the Straight Time Workers.

84. The specific job titles or precise job locations of the various Straight Time Workers do not prevent collective treatment.

85. All Straight Time Workers, regardless of their precise job requirements or rates of pay, are entitled to overtime for hours worked in excess of 40 in a week.

## JURY DEMAND

86. Klitzke demands a trial by jury.

## RELIEF SOUGHT

87. Wherefore, Klitzke prays for:

   (a) an order allowing Klitzke's FLSA claims to proceed as a collective action and directing notice to the other Straight Time Workers;

   (b) judgment finding Defendants in violation of the FLSA;

   (c) judgment finding Defendants liable to Klitzke and the Straight Time Workers for unpaid overtime and an equal amount as liquidated damages;

   (d) judgment awarding Klitzke and the Straight Time Workers reasonable attorney's fees and costs and expenses incurred in bringing this action;

   (e) judgment awarding Klitzke and the Straight Time Workers pre- and post-judgment interest at the highest rates allowed by law; and

   (f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ Richard J. (Rex) Burch**
_____

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Admitted to District of Colorado
**Michael K. Burke**
Texas Bar No. 24012359
Admitted to District of Colorado
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
mburke@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Kristofer J Klitzke

1. I hereby consent to make a claim against DCP Midstream/ Balance Environmental and Safety Solutions to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against DCP Midstream/ Balance Environmental and Safety Solutions.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: /s/ Kristofer J Klitzke (Nov 5, 2019)

Date Signed: Nov 5, 2019

- 12 -